Case is submitted and we will move to the third case of the day which is the S.E.C. versus the L.M.E. Family Trust et al., 21-10195. And I show that we have Mr. Levine here for the appellant, Mr. Kalaya and Mr. Bauer splitting time for the appellees. Mr. Levine, whenever you are ready. Good morning. May it please the court, I am Josh Levine here on behalf of the appellants. In the absence of an emergency, expediency cannot replace due process. And here, we are here today to address a fundamental due process violation that should offend all notions and principles of this nation we're founded upon. Before we get into due process, can we talk about the jurisdictional issue? Of course, Your Honor. What specifically? I know there were a number of, there was a motion to dismiss, there were arguments made there, then supplemental briefing. Yeah, well, I'm curious about whether we have appellate jurisdiction. Okay. I would argue for the reasons submitted in response to the motion to dismiss in the briefs and in our supplemental brief that there is. First, prior to this expansion order, the entities here that are appellants were not subject to any receivership. They could not have appealed the initial receivership order. The cases cited by the receiver in the SEC don't make a distinguished, don't distinguish whatsoever initial receivership orders versus subsequent receivership orders. The briefs tried to argue that if this court finds jurisdiction, then any receivership, any order in the middle of a receivership would be appealable, and that's simply not the case. An interlocutory order granting, you know, the quarterly application for fees is not appealable. It doesn't create a new receivership over new entities. So how then do you draw the line? Because you know, there's this series of old Fifth Circuit cases where that court, our predecessor, whose decisions, you know, by which we're bound, says that, you know, an entity, money, bonds, whatever, those are not immediately appealable. Correct. But those are assets, not necessarily, not necessarily entities. These are all, this wasn't a receivership taking over, like throughout the, throughout this case, the receivership has filed multiple motions for expansion. It took, it took my client's personal vehicles, it took their, it took their watches, it took a different personal property. These are all actual legal entities. So, so, all right. So where though from the language of any governing statute do we find this line between assets and entities? Well, I think, I think it's right there in 1292A. Okay. It says. Help me with it. It's, it says that, you know, appointment, appointment of a receiver, and for the very first time, a receiver was appointed over these entities. Same receiver though, right? I mean, we've got an appointment order. Everybody agrees back in the day we had an appointment order, and now there is an expansion of the receiver's duties, and you would say with respect to new entities, but I mean, I don't know. As I read 1292A2, it talks about things that happen on the front end, the appointment, and things that happen on the back end, winding up, and it doesn't talk about things that happen in the middle. And then if you, if you contrast that to 1292A1 about injunctions, there you've got front end stuff, uh, you know, granting injunctions, back end stuff, dissolving injunctions, and interim stuff, continuing and modifying injunctions. It just seems like we have an absence in 1292A2 of what we have in 1292A1, namely interim orders. Correct, Your Honor. Although, you know, an injunction, in an injunction order, a modification of an injunction, in my mind, contemplates a modification of the existing injunction, whether it's, you know, we want some of the cases we cited in our supplemental briefs, it changes the scope of the injunction between the parties that were there. Here, you're talking about a new, you're talking about a brand new party that couldn't have appealed and it, it might have. But you're not talking about a brand new receiver. That's the problem that I see jumping off the, the page. There was an appointment of a receiver that plainly can be reviewed on an interlocutory basis. But I read nothing in the language of 1292A2 that gives this court the power to address expanding the duties of the receiver who had already been appointed. What am I missing? Well, I mean, I think the first thing you're missing is that you're talking, the duties weren't expanded other than the fact that they were, they were applied to a new party, a party who was not part of this case, who didn't have the power to appeal the initial receivership order. Actually, multiple parties who didn't have the power to appeal the initial receivership order. And you're going to create an absurd result that's ripe for abuse and overreach by the federal government. Here, there's no dispute that, well, we'll always dispute that. Don't misapprehend my question. You might be right as a matter of public policy that someone ought to be able to get to an appointed a whole bunch of new assets that get frozen. That's a big deal. And maybe it should be reviewable on an interlocutory basis by an appellate court. But that's not what the statute appears to me to be saying. And so I guess what I'm asking is, if this isn't a new appointment, let's just accept for the purposes of my question that expanding the powers is not the same thing as appointing a receiver. Just accept it. I know you disagree with that. Is there any other basis for us to have the interlocutory power to entertain this appeal? Well, correct. There is, Your Honor. I mean, as was addressed in the supplemental briefing, we think this receivership order does carry with it certain elements that are injunctive in nature. You can't just, as I cited, you can't perform over substance in the title of an order and argue that. I do not dispute that they are equitable in nature. Whether they constitute an injunction is another question. The Supreme Court told us more than 100 years ago that there's a difference between a receivership appointing a receiver and an injunction. They make that point crystal clear, that appointing a receiver isn't an injunction. Is that still good law? That's still good law, but my point was slightly different. My point was that this order does more than just appoint a receiver. This order enjoins parties who were not previously parties to the order from doing certain things, from taking certain actions, and also enjoins them, a mandatory injunction requiring them to take certain actions. Okay, so that argument is, if I hear your argument, then it's twofold. We have the power first under A2 because this amounts to the appointment of a receiver with regard to the new entities, and second, you say independent of that, we have the power under A1 because this is an injunction. The problem with that argument, the latter one, and help me with it, I'm really looking to see is there a way we can hear it. The problem with A1, it seems to me, is that A2 plainly trumps A1. The specific trumps the general. Congress said with clarity, 1292A2 says you can go to the Court of Appeals on an interlocutory basis because we don't want interlocutory appeals generally. We don't want the courts to have to piecemeal this, but only if it's an appointment or if there are steps to accomplish the purpose or such as sale, et cetera. We agree it isn't the latter two. So I don't see how A1 helps you if A2 is the specific ground for getting up here on an interlocutory basis. Well, I think the answer is simply that while A2 is generally the basis for appointment of receivership, the receivership order went above and beyond and took on a character. You say generally. The problem is the language doesn't have modifiers generally. You can, the appointment of a receiver is appealable. Correct. But if this isn't an appointment but an expansion, then you say, well, it's an injunction in all but name. That may be true, but it seems to me the problem is A2 dominates. Is there anything besides 1292A1 and A2 that would give us the power to hear this? Well, we believe it could be considered a collateral order. That wasn't brief, but I do believe it could be considered a collateral order. It doesn't go to the ultimate merits of the case. It's significant and the, as well as the fact that the harm from a delayed review. So I believe it could be considered a collateral order. Can I ask you a quick question just to finish up this line of thought? So I think what you were trying to say is that the order expanding the receiver's duties and obligations did more than just that. It actually separate and apart, like forget about the receiver, it actually enjoined entities from doing things? Correct. What is that? I guess I've just sort of somehow I've like missed that in the briefing of this case. I really thought this was all about the appointment or expansion of the receiver's obligations. Is there some like separate piece of this order that serves as an injunction? Forget about the receiver. There's like this, there's like this other thing going on here. There's an injunctive aspect to this order. Well, the parties, as I said in the supplemental brief, the expansion order incorporates by reference to prior order, appointing the receiver, which enjoins the parties from in any way interfering with the receiver, requires them to turn over certain property, requires them to cooperate. I mean, that's an injunction. It even uses the word enjoined. But there, okay, so there I sort of do feel like you're running into the 120-year-old case that Judge Marcus is asking about Highland, which basically says there's in fact a difference between appointing a receiver and all of the accoutrements that come with appointing a receiver, some of which may feel a little injunctive and a true blue injunction. Those are just different things. I thought what you were saying is like separate and apart from the receiver and his obligations and duties, there's this other thing going on that might be called an injunction. No, you're right. Okay. Gotcha. I gotcha. Can I ask you one final question in this regard? Does the All Writs Act help you any here? Does that give us, we're not talking about the district court's power, we're talking about the power of this court to hear it on an interlocutory basis. Does the All Writs Act give us any independent basis to reach out for jurisdiction here? I mean, I would argue yes. We have a fundamental violation due process that I believe probably could qualify for mandamus. I mean, you're talking about- No, no, no. But we're not here on mandamus. That's not the issue. I'm just asking you whether we can ... Can you cite me any case where the All Writs Act has been used to find some auxiliary power by a court of appeals to take something up on an interlocutory basis as opposed to the normal way it comes up is a district court uses this auxiliary power to ensure that he continues to have jurisdiction of a case. Like courts got the case and then another court somewhere down the road intervenes in some way that would denude the first court of the power to hear it. That's where the All Writs Act usually comes up. But I haven't seen it come up where it's used to augment the power of a court of appeals for an intellect to take an argument on an interlocutory basis. Have I missed that or is there just nothing there? You missed it. I missed it as well. I see I'm already two minutes over my time, but just to get on the merits, I just want to say this. You're talking about more than a ... If we get to the merits, this is more than just a issue of full discovery and evidentiary hearing. This is a case where the district court or the federal government came in, took all the and sought to expand the receivership, but while not letting the company use its own books and records to defend itself. The SEC claims that we had all the discovery we need because they dumped their whole investigative file upon us. But at the end of the day, the investigative file is worthless. What we needed was our own books and records. And then two days before the hearing, the Sharpe report comes out where you accuse my client of being a Ponzi scheme. The problem with that is in an expansion motion, the receiver needs to not just show commingled funds, but he needs to show commingled funds with tainted funds. And while the receiver does a great job of showing that the funds were commingled, they were all in the same bank accounts and transferred back and forth, every allegation of tainted is just conclusory. He says that the syndication agreements or that all the payments to the insiders were all shams. But it's just a single word. It's a sham. That's a conclusory allegation. On top of that, while my client requests an evidentiary hearing, an oral argument, and the district court was certainly not required to do it, he in fact held an unnoticed oral argument where he allowed the receiver to go in and answer questions because he still was unconvinced that the receiver had met his burden. The court said, why not a list pendants or the freeze order? He said, well, here's why. It gave a few examples of why that was insufficient. Then when counsel for the appellants tried to argue, the court said, no, I'm not holding an oral argument. This was an issue that wasn't even in the brief. So to say that the issue was fully briefed in a fulsome briefing when the district court heard an expert report that the defense didn't have time to rebut as well as answers to questions that were not in the briefing that the district court shut down defense counsel, it's a clear due process violation. And we request that the court reverse and vacate and send it back to the district court. Okay. Very well. You've got your rebuttal time still coming to you. Mr. Kaliya, let's hear from you. Are you going first? Yes, your honors. May it please the court. My name is Timothy A. Kaliya. I represent Ryan K. Stumphauser, who's the court appointed receiver. I'm going to speak for about nine minutes and John Bowers for the SEC will speak for the remaining six minutes. I'd like to focus my time on three issues. The first one is I think it's important to look at the initial receivership order, not the expansion order, and understand what exactly that did and how it impacts the expansion order. Second, I'd like to address the jurisdictional arguments. And third, I'd like to briefly talk about the due process issue. In August of 2020, the district court entered the initial receivership order and that order imposed a broad asset freeze over all receivership assets and recoverable assets. The receivership assets are defined as assets of the defendants and recoverable assets are defined as any assets of the defendants or the relief defendant, which are the appellants here today, that are attributable to funds derived from investors or clients of the defendants. So the entities and the properties that were subject to the asset freeze are the appellants here today. And they were subject to an asset freeze as of the initial expansion, excuse me, the initial appointment order. And this is a critical point. So four months before the expansion, there was already an asset freeze and the appellants were unable to transfer, sell, dispose, or take any other action to liquidate these assets. And the appellants were parties to this case. Now you heard the appellants say this was a new party, new parties were added to the receivership. And that's true, the entities were different. But the parties appealing today were the defendants and the relief defendants who were already parties to the case. In other words, as of the initial appointment, that's when the appellants initially lost control of these assets. But they chose not to appeal that initial appointment order. Now four months later, the court entered the expansion order. And in the expansion order, in granting that relief, the district court specifically made some findings. Number one, the district court found that the appellants had acquired these assets with commingled investor funds. And number two, the district court wanted to make sure that these assets would be available for a potential future disgorgement award. Now since that time, the case has been resolved on liability. The defendants agreed to the entry of a final judgment. And as part of that, they agreed that the court could enter a disgorgement order against them. The SEC has already filed its disgorgement motion. And the defendants are scheduled to respond in three and a half weeks from now. So in other words, the very reason the court entered the expansion order, which was to ensure that these assets would be available to satisfy a disgorgement order, have proven to be necessary and are nearly upon us. So with that backdrop, I'd like to talk a little bit about 28 USC 1292A2, which is the interlocutory basis for this appeal, if it exists. That statute defines the limited types of receivership orders that can be appealed on an interlocutory basis. Now the order on appeal is an order expanding an already existing receivership to include additional entities and properties. So the jurisdictional question is whether an expansion order qualifies as an order appointing a receiver. In FTC v. People's Credit First, this court said in very clear language, we do not have jurisdiction to review a claim expanding the receivership to include assets of other corporations. That is the only case that we're aware of from the 11th Circuit that specifically addresses interlocutory orders and whether there's appellate jurisdiction over orders expanding a receivership. And the 11th Circuit in that case said no. Now looking outside of the 11th Circuit, in our motion to dismiss, we cited extensively to the Sulco case, which is a 10th Circuit case, and that is the only Circuit court case we've been able to identify that goes through a statutory analysis of 28 USC 1292A2 to determine whether there's jurisdiction to appeal an order over a receivership. And Sulco reaches the same conclusion as the 11th Circuit did in the People's First case. Sulco says that 1292A2 must be construed narrowly and it does not provide for interlocutory review of an order expanding a receivership. The reasons why Sulco reached that conclusion. Sort of the flip side of the question that I asked your adversary, I asked him, you know, he was drawing a distinction between assets and entities. Is there any circumstance in which you can imagine that an existing receiver's authorities or, you know, sort of powers could be expanded so dramatically that that would count as the appointment of a new receiver and trigger a new appeal period? I think that's possible, but that's not the case in front of us. Yeah, I'm just curious about what the limits of the principle are. If the court had appointed a receiver or expanded that receiver's duties over totally unrelated entities, that might be a different scenario. But the Sulco case and the parallels to this case are really striking. Number one, in both cases, the additional entities were already subject to an asset freeze. So the initial appointment order already envisioned some sort of relief as to those additional entities. Number two, in both cases, the appellants were on notice of the initial appointment order and failed to appeal it. And third, in both cases, the district courts concluded that the additional entities were the main defendants that were subject to the initial appointment order, including the commingling of funds, and were directly or indirectly controlled by the defendants. So there is possibly a case that could come before this court where, and Sulco recognizes this, that this may not apply in all cases. But in Sulco, where those were related entities that were the subject of commingling and were on notice of the initial appointment order, there's no interlocutory appellate jurisdiction. And the same is true here. There are some differences, though. In our case, in Sulco, for instance, I think in Sulco there was a bench trial, a 12-day bench trial. What do you make of that difference? I don't think that's a distinction without a difference. I mean, ultimately, 1292A2 speaks about the circumstances under which a receiver can be appointed. Sometimes it happens at the inception of a case. Often it happens on an ex parte basis. The court does this on an ex parte basis before the defendant even has notice of the proceedings. So whether it happens at the initial stages of the case or whether it happens later on in the case, these are really not distinctions that I think the court should consider on whether it has jurisdiction. Now, as to the due process issues and those related issues, it might come into effect. Before you get to due process, your colleague makes an additional argument. He says, altogether beyond the power to hear it under A2, we have the power under A1 that this, in every way but name, is an equitable exercise of power that looks, smells, and tastes like an injunction. The court is ordering a freeze of some new stuff here. And that's a big deal. It deprives him of access to his property. And if the final bell isn't rung for a number of years, he's without any way to challenge what the district court did. And so he says, this really is an injunction. It looks like an injunction in every way but name. And that therefore, if we don't have the power under 2, we have the power under 1 to hear it. What about that? Your Honor, that's the Highland case. So the Supreme Court addressed this over 100 years ago and said, orders appointing a receiver or involving the appointment of a receiver and injunctions are two very different things. Now, although an order placing a receiver in charge of an entity has some injunctive type qualities, it is not an injunction. For example, an order appointing a receiver commands the defendants to turn over assets and records to the receiver. That is potentially an injunctive type order. But the court makes very clear in Highland, and that case has been cited since then as late as 2010, to say that an injunction, even though it has those injunctive type qualities, is not a receivership order. And ultimately, as you know, Highland was written long before we had the iterations of 1292A1 and A2. The Supreme Court didn't have the benefit of Congress having stepped in and said, we want the courts of appeals to hear on an interlocutory basis injunctions. Is that of any moment here? I guess what I'm really asking is, does Highland control the resolution of our interlocutory power under A1 or A2? I don't see how it can. Unless you just make a purely formalistic argument about this is an injunction, this is a receivership, they're different, QED, that answers the question under A1. I think the general statutory analysis that says when there's a provision of general application and one that has very specific meaning, for example here, 1292A2 says only these three types of receivership orders can be appealed. Maybe as a matter of public policy, the legislature should change that and expand it. Your argument is he can't seek relief under A1 because A1 doesn't apply. The specific trumps the general and the specific eliminates the power in three very specific and limited ways. That's the end of it. That's exactly right. I see I'm over my time. I will defer. Final question. Do we have any power under the All Writs Act? No, I don't believe so. I'm not aware of any cases where a circuit court has established jurisdiction where under the statute it does not otherwise have it, under the All Writs Act or otherwise. Thank you for your time. Very well. All right. Mr. Bowers, let's hear from you. May it please the court, my name is John Bowers and I represent the Securities and Exchange Commission. As explained in more detail in our briefs, this appeal should be dismissed for a lack of jurisdiction. As Judge Newsom's question indicated and as we briefed, the expansion order is not a final judgment and none of the exceptions to the final judgment rule apply. The built into Judge Newsom's question was the framework that Congress put in place, which is that appellants could have appealed the initial appointment of the receiver. They were parties to that process. They opposed the process, but they did not appeal the order. They will likely be able to appeal the district court's final distribution order or any order that finally resolves. Let me ask you in that regard, wouldn't it have been a tad premature to appeal the contemplation of the possibility that the order would be expanded to add new entities that hadn't been added? I mean, you understand what I'm, it's one thing to say I'm challenging the appointment of the receiver and another thing to say I'm challenging the potential for an expansion which has not yet transpired. I believe I understand your question and the difference, the point is there was due process at that point. If you look at who the parties are here, the appellants actually knew about the properties that were later the subject of the expansion motion. The SEC did not, the receiver did not. We come in with only a broad understanding of the business and a strong belief that there has been securities fraud of some form or fashion. We go in to attempt to preserve the status quo and that was the point of getting a receiver established and appointed was to maintain the status quo in order to deal with commingled investor funds. And so that would, while they would not necessarily have made the motion or made the appeal targeted to the specific properties or entities that were the subject of the expansion order, they at least were aware that that was in play based on, as Mr. Kleya mentioned, the scope of the initial order which was very broad as to any property or entity related to the funds. That's the point of the initial appointment and that is certainly the point of the expansion order. And as Judge Newsom's question implied, the key point here is appellants just don't have the right to appeal every interim step in the receivership and that's clear from the case law analyzing 1292A2 that it doesn't apply to orders entered in the normal course of a receivership. Here, that's exactly what has happened. The parties have figured out along the way that there are additional properties, additional entities that received commingled funds. And the district court wanted to do the same thing it did in the appointment order, which is preserve those funds in case it later ordered distribution of funds out to injured investors. You do agree that this does include serious, perhaps irreparable consequences, as your opponent lawyer said, because here we have an expansion of the receivership estate to include perhaps tens of millions of dollars. What's your response to that? Our response is that it's serious and that the district court took it very seriously. And you can see that just in the language of the order and in the way the district court talked about it at the status conference that also took place before the issuance of the order. But it's not irreparable. What we don't see here is irreparable harm because what's happening is a holding in place of these assets subject to later determination of liability of the appropriate disgorgement, if any. And at that point, some sort of a distribution plan that addresses all of what I just said and handles these properties. Nothing is being sold at this point. No assets are being transferred other than into the control of the receiver who is court appointed and will maintain the status quo until the point of a more formal order coming from this court. And that's clear from the case law that is both relevant to jurisdiction and how these cases work. And I would point to Elliott and Torsha, which we talk about in our briefs. Those are happening on a final distribution plan. That just highlights where we are procedurally and why this interim relief is not really appropriate. And it highlights the type of process that should happen at that point. And actually, interestingly enough, if you look at how the process was analyzed in Elliott in particular, there were distinctions between how the different groups of investors were essentially what Judge Ruiz has already done here, which is to make sure that the party opposing the relief has all of the relevant evidence in their possession and that they have an opportunity to argue. And that is exactly what happened here. I just want to make sure that I also touch on the All Writs Act, since that came up in a number of questions. I think it's been effectively handled, especially by Mr. Kalaya's responses. But in our point of view, since we cite an SEC case, unfortunately not an appellate case, in our brief, we cite Credit Bank Corp. And that makes clear, especially in that it relates exactly to one of our cases, that the All Writs Act is typically invoked in receivership cases to enjoin a separate action in another forum. And in our cases, we actually do see that a fair amount. If we have a receivership appointed in a court in North Carolina, someone may file an action elsewhere in North Carolina, in a state court, just in a different part of North Carolina, or anywhere else across the country, or around the world, frankly, that seeks to have an impact on part of the subject matter of what the district court is dealing with in North Carolina, that court would be able to enjoin that under the All Writs Act. That's not the case here. All of the activity here relates squarely to what is happening in the district court, which is the handling of district court proceedings based on our, the SEC's, allegations of securities fraud. Has the All Writs Act ever been used to expand the power of an appellate court to hear something on an interlocutory basis, to your knowledge? I'd be happy to submit a letter brief on that point. I can't say that we actually briefed it quite in that way. I would say we're not aware of any case applying the All Writs Act that comes anywhere near this case, or that impacts, you know, we tend to pick up the cases of SEC in the title as well, even if they're not clearly relevant. And so we would, my suggestion would be we haven't seen it, if it's out there, but I'd be happy to do further research and submit a letter. I see that I'm past my time. Very well. Thank you so much, Mr. Bowers. All right, Mr. Levine, you've got five minutes of rebuttal time remaining. Thank you, Your Honor. Going back on what they said here, it had the Alameda Family Trust, or these entities under the expanded receivership filed a notice of appeal of the initial receivership order. We'd be right here where we are now. A motion to dismiss is right, it's premature. How do they appallingly say that a party who is not party to an order, not aggrieved by an order, can appeal it, goes against fundamental notions of appellate jurisdiction. You just can't. If you're not aggrieved by an order, you can't appeal it. Initially, the SEC here said that they didn't know about all these parties, that they just got the receivership in place to find them. At the same time, they also named the Alameda Family Trust as a relief defendant. They clearly knew about the trust at the time. Again, talking out of both sides of their mouth here. Again, I heard from Mr. Calaya that a case where they put on assets of a corporation, new assets of a corporation were brought under a receivership, and that was held to be not appealable. Again, we're not talking about new assets of a corporation under a receivership. We are talking about entities, LLCs mostly, that were not party to a prior receivership order. They couldn't have appealed it, and to say that the statute doesn't appoint a receivership over them, this order is not for the first time appointing a receivership over these entities. It creates a position where these entities cannot appeal the initial order. If the SEC has its way, they can appeal the subsequent order. You create a position where there's no review of a very drastic remedy that the district court recognized was a drastic remedy. Of course, it'd be more accurate to say not that there is no review, just that there is not an interlocutory review. You'd get your chance to come back at the end of the rainbow to the Court of Appeals. That's true, I guess. However, while this litigation is going on, my clients are being forced to pay $5,000 a month rent in their own house, to stay in their own home. The income-producing properties that belong to these other entities, from what I've heard, some of them are laying vacant. They're not being managed properly. There is very much potential for irreparable harm that cannot be adequately reviewed after this case is over. While my colleague mentioned that there is a bifurcated settlement where we've agreed to certain . . . to allow the district court to go forward with a discordant penalties, we believe there are more than sufficient assets already in the receivership before we get to these entities to cover that. Let me ask you this. What relevance should we take away from the fact that both the Supreme Court and this court and bank recently have been pretty charry about interlocutory appeals? I think about Mohawk from the Supreme Court, Smile Direct from this court sitting in bank, where we've said, no, you've just got to wait until the end, including in a case like Mohawk where we're talking about disclosure of attorney-client privilege material. It sounds pretty bad. Nonetheless, the Supreme Court says, nope, got to wait. I think at the end of the day, you look at the statute, it's in the statute, appointment of a receiver. The receiver was not appointed over these entities until this order was entered. It was timely appealed. Given that, like I said, there's plenty of rightness, plenty of chance for abuse and overreach by the federal government, you say, okay, we've alleged par funding was alleged in security fraud violations. Obviously, you can show that assuming the government's right, that the SEC is right, that the money in par funding was a result of security fraud violations. That's easy to trace. Whether or not, ultimately, we try to prove that it's not, they prove that it is. What they couldn't prove is that the money in these entities was a result of security fraud violations. What do you do? You wait until you get a receiver, you wait until the 30 days to appeal goes by, and then you move to expand the receivership. Over entities that didn't have standing to appeal the initial appeal, and you say, well, too bad, so sad. On top of that, you violate their due process by keeping their books and records. You drop a report two days before a hearing that says, this company's a Ponzi scheme, which clearly tainted the court. There's no reasonable way to argue the district court wasn't tainted by the Sharpe report. The court even said, everything I hear from defense counsel is spin, and I won't give any credit until they have their numbers and their CPA review it. We were trying to get our CPA to review it for months prior to that. When there were a few things that were raised for the first time by the receiver in that argument, for example, the court asked, the district court asked, why is a list pendant and their asset free is not sufficient? The receiver's counsel said, well, there's an issue with one of the buildings where there's a foreclosure going on, and we have no way to prevent that foreclosure. When my colleague tried to say, well, I can explain that, Your Honor, because it wasn't truly a foreclosure. That was just a dispute over certain assessments. The district court shut him down. Didn't even let him hear it. He said, I'm not holding oral argument, but in reality, he held one-sided oral argument where the receiver got to argue exactly why the receivership should be expanded, and the defense didn't get to rebut that. I mean, that's a basic due process violation. I see my time's up, and I request that you reverse the order of appeal. Very well. Thank everyone involved in the case. Well done. That case is submitted, and we will move to the next.